## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

CHRISTOPHER CRAIG WILLIAMS,

      Petitioner,

v.                                 Case No. 3:19-cv-770-TJC-MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## ORDER

### I.   Status

      Petitioner, an inmate of the Florida penal system, initiated this case by filing a pro se Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 (Doc. 1) and a Memorandum in Support (Doc. 2). He challenges a state court (Flagler County, Florida) judgment of conviction for aggravated child abuse. Petitioner is serving a 15-year term of imprisonment. Respondents filed a Response (Doc. 8) with exhibits (Doc. 9; Resp. Ex.). Petitioner filed a Reply (Doc. 10). This case is ripe for review.[1]

---

[1] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citing Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary

## II.      <u>Governing Legal Principles</u>

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. <u>See</u> <u>Marshall v. Sec'y Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

---

hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id.</u> The Court finds that "further factual development" is not necessary. <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Richter, 562 U.S. at 101 (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary

3

conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Pope

v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that Boerckel applies to the state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, 513 U.S. at 365-66; O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal citations modified).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state

5

> procedural rule. See, e.g., Coleman, 501 U.S. at 747-48;
> Wainwright v. Sykes, 433 U.S. 72, 84-85 (1977). A state
> court's invocation of a procedural rule to deny a
> prisoner's claims precludes federal review of the claims
> if, among other requisites, the state procedural rule is
> a nonfederal ground adequate to support the judgment
> and the rule is firmly established and consistently
> followed. See, e.g., Walker v. Martin, 131 S. Ct. 1120,
> 1127-28 (2011); Beard v. Kindler, 130 S. Ct. 612, 617-
> 18 (2009). The doctrine barring procedurally defaulted
> claims from being heard is not without exceptions. A
> prisoner may obtain federal review of a defaulted claim
> by showing cause for the default and prejudice from a
> violation of federal law. See Coleman, 501 U.S. at 750.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012) (internal citations modified). Thus,

procedural defaults may be excused under certain circumstances.

Notwithstanding that a claim has been procedurally defaulted, a federal court

may still consider the claim if a state habeas petitioner can show either (1) cause

for and actual prejudice from the default; or (2) a fundamental miscarriage of

justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). For a petitioner to

establish cause and prejudice,

> the procedural default "must result from some objective
> factor external to the defense that prevented [him] from
> raising the claim and which cannot be fairly
> attributable to his own conduct." McCoy v. Newsome,
> 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Murray
> v. Carrier, 477 U.S. 478, 488 (1986). Under the
> prejudice prong, [a petitioner] must show that "the
> errors at trial actually and substantially disadvantaged
> his defense so that he was denied fundamental
> fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999) (internal citations modified).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157 (internal citations modified). "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such

evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

### C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003); <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)). Courts employ a two-part test when reviewing ineffective assistance of counsel claims. <u>See</u> <u>Strickland</u>, 466 U.S. at 687.

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id.</u> at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u> at 687.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id.</u> at 693. Counsel's errors must be "so serious as to deprive the defendant

8

> of a fair trial, a trial whose result is reliable." Id. at
> 687.

Richter, 562 U.S. at 104 (internal citations modified).

The two-part Strickland test applies to challenges to the validity of guilty pleas based on ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 58 (1985). The petitioner must still demonstrate that counsel's performance was deficient. See id. at 56-59; Lynch v. Sec'y Fla. Dep't of Corr., 776 F.3d 1209, 1218 (11th Cir. 2015). To establish prejudice, however, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59 (footnote omitted); Lynch, 776 F.3d at 1218.

There is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation; thus, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is afforded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, 562 U.S. at 105. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at 105.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014) (internal citations modified). In other words, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

III.   **Analysis**

Between the Petition (Doc. 1), the Memorandum in Support (Doc. 2), and the Reply (Doc. 10), it is not entirely clear what grounds Petitioner raises. In the Petition, he lists the following grounds: (1) ineffective assistance of counsel; (2) incompetence to proceed to trial; (3) procedural due process violation; and (4) Fifth Amendment Due Process Clause. Doc. 1 at 5, 7, 8, 10. Under each ground, he states: "please refer to the attached petition memorandum," id., but his Memorandum does not clearly lay out each ground. He does, however, indicate that he raised each ground in his postconviction motion filed pursuant to Florida Rule of Criminal Procedure 3.850. Id. at 6, 7, 9, 10; Doc. 2 at 1.

Respondents argue that "Petitioner's federal habeas claims, other than the claim of ineffective assistance of counsel, have not been raised in state court." Doc. 8 at 8. Thus, Respondents contend any claims other than Petitioner's ineffective assistance of counsel claim are unexhausted and procedurally barred. Id. Additionally, Respondents contend that "[t]o the extent that Petitioner is raising state claims, they are not cognizable on federal habeas review." Id. In his Reply, as to exhaustion, Petitioner argues that he raised "his 'involuntary plea' claim in his Rule 3.850 motion," and that he does not have to exhaust his incompetency claim. Doc. 10 at 10.

The Court addresses each claim below.

## A. Ground One

According to Petitioner, his trial counsel (Kurt Teifke, Esquire) was ineffective for withdrawing his "Suggestion of Mental Incompetence to Stand Trial," and "unduly influenc[ing] and coerc[ing Petitioner] to involuntar[il]y plead no contest" and "compell[ing] his deleterious incriminating statements at the plea hearing." Doc. 2 at 8. Petitioner further argues that his counsel knew of his "prescribed medications[,] . . . knew of his history of intellectual disabilities and emotional behavioral disability, and knew that [he] was under the influence of his anti-psychotic medication at the time of the plea hearing." Id. He asserts that counsel should have "ensure[d] conclusion of his competency reexamination." Id. at 11. Petitioner argues that but for counsel's alleged ineffectiveness, he "should have been tried by a jury of his peers." Id. at 8.

In his Rule 3.850 motion, Petitioner argued that his counsel was ineffective for similar reasons. The state court identified Strickland as the controlling legal authority for ineffective assistance of counsel claims, and denied the claim:

> Here, Defendant alleges that his history of "mental incompetence, intellectual disability, diagnosed severe Disruptive Mood Dysregulation Intellectual Disorder, manic episodes, depression, severe emotional stability, diminished frustration tolerance, premature impulsive responses, severe cognitive and functional limitations, psychotic medication . . . acute psychotic episodes, Full Scale IQ Score of 48, [and a] history of approximately twenty

baker act involuntary institutionalization incidents"
should have caused his trial counsel to seek a re-
examination of his competency and a second
competency hearing. In fact, Defendant's trial counsel
(his third appointed counsel) filed a Suggestion of
Mental Incompetency to Stand Trial, but withdrew the
motion at the plea hearing:

> MR. TEIFKE: I think it's worth mentioning,
> Your Honor, that, as you know, you presided
> over this case for the whole time, there was - you
> declared him incompetent to proceed at one
> point. He was sent off for restoration training.
> He was restored in someone's opinion and that's
> why we're back on a pretrial docket. I still had
> my concerns. I actually filed a motion for a
> reevaluation as to competency. **I'm going to
> withdraw that. I've had conversations with
> Christopher since then, I've gone over the
> factors, the competency factors, I'm
> comfortable that he is indeed restored or
> he is competent to proceed.** That being said,
> mental health is very much a part of this case,
> and that's going to be part of the sentencing.

Trial counsel requested an order for a new mental
health evaluation for purposes of a presentence
investigation report. Trial counsel reiterated that he
had concerns about Defendant's mental health with
respect to sentencing, but not about Defendant's
competency to proceed:

> MR. TEIFKE: One other thing, Judge, just from
> a how much time do we need standpoint, I am
> going to move the Court for -- to declare him
> indigent for costs so that I can have a --

> THE COURT: Granted.

> MR. TEIFKE: -- mental health evaluation.

THE COURT: Just get me a short order, and it's granted. I know enough of the history that I agree with you.

. . . .

MR. TEIFKE: And, again, I do have concerns about mental health. I think it's very relevant to how this case is going to play out. But specifically competency, I'm aware of those factors, **I agree with [the Agency for Persons with Disabilities'] determination that he has been restored, he is competent, so, you know, for whatever it's worth I am withdrawing that – I'm not pursuing that**.

Defendant has failed to set forth circumstances sufficient to warrant an evidentiary hearing on this claim. Trial Counsel acknowledged that Defendant had previously been evaluated, deemed incompetent, then restored and deemed competent to proceed. Trial counsel assessed Defendant's competency based on his own knowledge of the competency factors, and believed Defendant competent to proceed. There was no deficient performance by trial counsel in failing to seek a second competency determination. Trial counsel's performance did not fall below an objective standard of reasonableness, and this claim therefore fails under the <u>Strickland</u> deficiency prong.

Resp. Ex. W at 3-5 (internal citations omitted). Petitioner appealed the denial of his Rule 3.850 motion, and the Fifth District Court of Appeal per curiam affirmed the postconviction court's order without issuing a written opinion. <u>See</u> Resp. Ex. Z.

This Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough

review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. The record supports the state court's adjudication. Thus, Petitioner is not entitled to federal habeas relief on this ground.

Even assuming the state court's adjudication is not entitled to deference, Petitioner's claim is without merit. On January 5, 2016, Petitioner was charged by information with one count of aggravated child abuse. Resp. Ex. A. Petitioner's counsel, Regina Nunnally, Esquire filed a suggestion of mental incompetence to stand trial on January 12, 2016. Resp. Ex. B. On January 15, 2016, the trial court ordered Petitioner to undergo a mental examination (Adult-Competency / Mental Illness). Resp. Ex. C. On February 25, 2016, Louis Legum, Ph.D., a licensed psychologist who was appointed by the trial court, authored a report finding Petitioner to be "incompetent to proceed to trial because of his intellectual disability." Resp. Ex. E at 10. Dr. Legum also noted, in part:

> [T]his evaluation does not suggest that [Petitioner] is acutely psychotic or otherwise disengaged from reality. Rather, impressions gleaned from the mental status examination and some assessments of malingering suggest that [Petitioner] is transparently and dramatically invested in exaggerating his psychological issues to the purpose of

securing either an exoneration on the charge against him or its being resolved through placement in a mental hospital. Intellectual testing of [Petitioner] is seen to be of uncertain validity as it appeared that during some facets of it, he was deliberately being less than responsive to the test demands. However, taken as a whole, including the corroborative documentation from the Flagler County School System, it is believed that [Petitioner] most likely is functioning in the mild range of intellectual disability. . . . [Petitioner] is regarded as being in need of involuntary placement in a residential hospital facility to this purpose rather than the services being rendered in the community. It is believed that [Petitioner] is capable of attaining competency with residential competency training in 90-120 days.

Id.

The trial court subsequently ordered another evaluation to determine intellectual disability or autism. Resp. Exs. G, H. On April 8, 2016, Petitioner was examined by Jeff Oatley, Ph.D., who opined that Petitioner "appear[ed] to suffer from an Intellectual Disability," and recommended that the court find Petitioner incompetent to proceed. Resp. Ex. I. Dr. Oatley also noted: "While much of this exam was influenced by probable malingering, his school records do in fact reflect an Intellectual Disability which would impact his ability to retain more complex information." Id. Based on those reports, on April 27, 2016, the trial court found Petitioner incompetent to proceed and committed him to the Agency for Persons with Disabilities (APD). Resp. Ex. J.

On June 8, 2016, APD provided a report from Ryan Cuddy, Psy.D., finding Petitioner had been restored to competency. Resp. Ex. K. Dr. Cuddy indicated that Petitioner "appeared to be putting forth good effort regarding the competency questions." Id. at 5. Dr. Cuddy found that Petitioner had sufficient capacity to "appreciate his current pending legal charge," "appreciate possible penalties associated with his current pending charge," "appreciate the adversarial nature of the legal process," "disclose pertinent facts to his attorney and to assist in the preparation of his defense," "apply courtroom knowledge and behave appropriately when in the courtroom," and "testify relevantly." Id. at 5-6.

Thereafter, on July 13, 2016, the parties stipulated to the report's competency finding, and the trial court found Petitioner competent to proceed. Resp. Exs. M (circuit court action form), CC (transcript of hearing). Notably, at the hearing, Petitioner engaged with the trial court. Petitioner expressed concerns about his daughter in foster care, and he discussed with the judge what his plan was for when he got released. Resp. Ex. CC at 6-8. While requesting pre-trial release and/or a different attorney, Petitioner stated, "I know I was wrong." Id. at 11.

According to the state court's docket, Petitioner's counsel (Ms. Nunnally) filed a motion to withdraw on August 16, 2016, which the court granted on August 22, 2016. That same day, the office of regional criminal conflict

appeared but withdrew the next day. On September 27, 2016, Mr. Teifke was appointed to represent Petitioner. On November 10, 2016, Mr. Teifke filed a suggestion of mental incompetency to stand trial. Resp. Ex. N. Then, on December 7, 2016, about six months after Dr. Cuddy's examination, Petitioner entered a non-negotiated no contest plea. See Resp. Exs. O (circuit court action form), DD (transcript of hearing).

At the December 7, 2016 hearing, Petitioner was placed under oath, and he stated that the plea was "the best thing in [his] interest right now." Resp. Ex. DD at 5. The trial court explained that it would conduct a sentencing hearing at a later date and that Petitioner was facing zero to thirty years in prison. See id. at 5-6. The court further explained that Petitioner was waiving the right to a jury trial, to hold the state to its burden of proof beyond a reasonable doubt, and to present evidence on his own behalf. See id. at 6-7. Petitioner affirmed that he understood the rights he was waiving by entering the plea. See id. at 6-8. The trial court found that Petitioner entered the plea freely, knowingly, and voluntarily. See id. at 8-9.

At that point in the hearing, Petitioner's counsel (Mr. Teifke) then explained that he had filed a motion for evaluation of competency but that he was withdrawing the motion. Id. at 9-10. Counsel stated that while he had concerns about Petitioner's mental health in terms of mitigation at sentencing,

he was confident that Petitioner was "competent to proceed." <u>Id.</u> The following

discussion occurred at the end of the hearing:

> [THE STATE]: Judge, I'm sorry.
> Before we finish, I hate to bring this up. I forgot Mr. Teifke had raised the issue of his competency, so my thought is procedurally I think that that has to run its course before we can do anything. I think that the proceedings are kind of stayed until that.
>
> THE COURT: He just withdrew it.
>
> MR. TEIFKE: I withdrew the motion.
>
> [THE STATE]: No, I know, I heard that.
> I mean, I guess I can look into it. I don't know if we can just technically withdraw the suggestion of incompetency.
>
> THE COURT: This is what Mr. Teifke said - - at least I think the record bears out what he said, is that he met with him subsequent to filing the motion and didn't feel that it was necessary any longer. I mean, that it just wasn't necessary at that point after meeting with him. I mean, that's what he put on the record.
>
> MR. TEIFKE: It is. And, again, I do have concerns about mental health. I think it's very relevant to how this case is going to play out.
> But specifically competency, I'm aware of those factors. I agree with the APD's determination that he has been restored, he is competent. So whatever it's worth, I'm withdrawing that. I'm not pursuing that.
>
> [THE STATE]: And I'm not questioning anything you're saying. I just don't want this to come back a couple years down the road and we're looking back and saying that we should have done this

correctly. I just have some concerns, that's all. I just
want to make sure.

THE COURT: Well, I'll let you address them.
For now I'm going to order a PSI and I'm going to set
it for sentencing when that comes in, and I'll come
back up here and do it.

But if you feel you need to file something or do
something, feel free. But I think Mr. Teifke corrected
the record.

Id. at 13-14. The state did not file anything after the hearing regarding the

procedural aspect of defense counsel withdrawing the motion.

The trial court ordered a mental examination for sentencing. Resp. Exs.

P, Q. On May 15, 2017, Dr. Legum authored a report, and he testified at the

sentencing hearing on July 28, 2017. Resp. Exs. R (Dr. Legum's report), EE

(transcript of sentencing hearing). Petitioner also testified at the sentencing

hearing. When Petitioner's counsel asked him why he entered the no contest

plea, Petitioner responded in part: "Because I felt like I was wrong for what I

did, I felt bad." Resp. Ex. DD at 47. Petitioner acknowledged the seriousness of

his actions and testified that he was "accepting responsibility for it because the

kid got hurt." Id. at 48-49. On cross-examination by the state, the following

occurred:

Q    So what happened to the victim?

A    What happened to the victim was I had
him up in the air like this, and then I had dropped him.
And I had went forward and I dropped him. And before
I could even catch him it was too late. He got up after

he fell and went around the house laughing. I, like, Jacoby, you all right? He, like, yeah, yeah, I all right. And he went back to playing.

I say about 20 minutes later he started bleeding out, 20 minutes later.

Q       So if a doctor says that's not consistent with the injuries, you're saying that's not what happened?

A       That's what happened, man. I'm telling the truth what happened. This is my sentencing day. I know I have to be ready for the bad and good, so . . . .

Q       And if three witnesses say it happened differently - -

A       Man, they got three different stories. Look in the paperwork, man. I ain't stupid or nothing. I ain't trying to be smart. I ain't trying to be a smart aleck, man. You read the paperwork.

Them kids got different stories. One say I was standing by my car. One say I went in the house. The other one says some other stuff, man. It's in the paperwork. Read it black and white. If you all messed up, it's not my fault, that's all I got to say.

I feel bad for the kid anyway. I was feeling bad the day it happened. I was asking all the officers, Is he going to be all right?

His mama ain't worried about him. I was worried about him. The way I feel, either one care about that kid, that's the way I feel. I care more about him, and that's not even my blood.

Id. at 51-53.

During closing arguments at sentencing, Petitioner's counsel stated, in part:

> [Petitioner] was restored to competency per the doctor, and frankly, I tended to agree with that after meeting with him a few times. He was able to speak to me, assist in the defense, understand what's going on, albeit with certain emotions. And insanity I don't believe was ever a viable defense I wanted to raise, that he didn't understand right from wrong.

Id. at 56-57.

The trial court sentenced Petitioner to fifteen years imprisonment. See Resp. Ex. S. Petitioner did not file a direct appeal. However, as noted above, Petitioner filed a Rule 3.850 motion, which the postconviction court denied. Petitioner appealed, and the Fifth DCA per curiam affirmed the postconviction court's denial without a written opinion. Petitioner then filed the instant case.

Petitioner's counsel was not deficient for withdrawing his suggestion of incompetency and advising Petitioner regarding entry of his plea. Based on counsel's statements at the plea hearing, counsel's interactions with Petitioner caused him to believe Petitioner was competent to proceed. Petitioner appropriately responded to the trial court's inquiries during the plea hearing, and nothing in the transcript reflects that Petitioner was unable to assist his counsel in his defense. Rather, to the contrary, Petitioner's statements reflect that he had a sufficient present ability to assist counsel with a reasonable degree of rational understanding and that he had a rational and factual

22

understanding of the pending proceedings. Counsel reiterated at sentencing that he believed Petitioner understood the proceedings and was able to assist counsel in his defense. Thus, Petitioner has failed to show that counsel was deficient. Ground One is due to be denied.

## B. Ground Two

Petitioner apparently claims that his plea was involuntary. He raised a similar claim in his Rule 3.850 motion, which the postconviction court denied:

> Defendant claims that his plea was involuntary because his trial counsel coerced and compelled him to enter a no contest plea, and trial counsel and the Court knew or should have known that Defendant's plea was involuntary due to his mental incompetence. Defendant alleges that the trial court violated the Florida Rules of Criminal Procedure when it failed to query whether Defendant was under the influence of his prescribed medications. Underlying this claim is an implication of actual incompetency to proceed, which claim may not be raised in a postconviction motion. Nevertheless, Defendant's claim that his plea was involuntary is refuted by the record. Section 3. I 70(k), Florida Statutes (2016), provides:

>> Responsibility of Court on Pleas. No plea of guilty or nolo contendere shall be accepted by a court without the court first determining, in open court, with means of recording the proceedings stenographically or mechanically, that the circumstances surrounding the plea reflect a full understanding of the significance of the plea and its voluntariness and that there is a factual basis for the plea of guilty. A complete record of the proceedings at which a defendant pleads shall be kept by the court.

> A defendant has the burden of showing that his plea was not knowing or voluntary. Allegations that a plea was involuntary or based on a misunderstanding or mistake can be refuted by a plea transcript which conclusively establishes the defendant's understanding and that the plea was not coerced. Here, at the plea hearing, the Court questioned Defendant about his ability to understand the consequences of entering a plea, and Defendant responded appropriately when questioned during the plea dialogue. Defendant could and did speak intelligently with the Court about his plea and fully understood the nature and consequences of the plea, and the record shows that the plea was not the result of promises, threats, or coercion. The plea was taken in open court and was properly recorded.
>
> Defendant has failed to establish that his plea was involuntary.

Resp. Ex. W at 5-6. Petitioner appealed, and the Fifth DCA per curiam affirmed the postconviction court's denial without a written opinion.

This Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. The record supports the state court's adjudication. Thus, Petitioner is not entitled to federal habeas relief on this ground.

## C. Remaining Grounds

As noted, Petitioner did not file a direct appeal after his state court judgment of conviction was entered. The only claims he exhausted in state court are the claims raised in his Rule 3.850 motion, which include the two claims addressed above and a speedy trial claim that Petitioner did not raise in his federal habeas Petition. Insofar as Petitioner raises any other claims, such claims are unexhausted and procedurally barred.[2] Petitioner has shown neither cause nor prejudice resulting from the procedural bar, and he fails to demonstrate a fundamental miscarriage of justice would result if these claims are not addressed. Thus, any other claims raised in the Petition are due to be denied.

Accordingly, it is

**ORDERED**:

1.      The Petition (Doc. 1) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.      The **Clerk of Court** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

---

[2] Notably, Petitioner filed a federal habeas petition in this Court in 2017. See Case No. 3:17-cv-1163-TJC-JRK. The Court advised Petitioner about the exhaustion requirement and dismissed the case without prejudice to Petitioner filing a federal petition after he exhausted all state court remedies.

3.      If Petitioner appeals the denial of his Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[3]

**DONE AND ORDERED** at Jacksonville, Florida, this 5th day of April, 2022.



TIMOTHY J. CORRIGAN
United States District Judge

JAX-3 4/4
c:
Christopher Craig Williams, #V51544
Counsel of Record

---

[3] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.